# In the United States District Court for the Western District of Texas

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | SA-10-CR-20-XR |
| | § | |
| JUAN FIDENCIO ROMO-DE LA ROSA | § | |

## ORDER

On this day came on to be considered Defendant's motion to suppress (docket no. 27). The motion is denied.

### BACKGROUND

The Defendant is charged in a one-count indictment with illegal re-entry in violation of 8 U.S.C. § 1326.

At approximately 1:20 a.m., on December 14, 2009, San Antonio Police Officer Natalie Ramirez was dispatched to 1307 Hays Street for a possible burglary in progress. Officer Ramirez met with the homeowner, who relayed a description (including height, weight and clothing (grey/green hood and jeans)) of the person that was suspected of trying to enter the residence. Upon receiving this description, Officer Ramirez issued a BOLO (be on the lookout) to other officers patrolling the area.

After receiving the BOLO, SAPD Officers Zigmund and Barnes found two individuals (the Defendant and Homero Vasquez) a few blocks from Hays Street,

in the backyard of 915 N. Palmetto Street. This house was occupied by Homero Vasquez's sister.[1] No evidence was offered as to whether the backyard was fenced. The Defendant was wearing a blue pair of pants and a green sweatshirt with a grey t-shirt. The Defendant testified that he was handcuffed by a police officer while in the backyard. It is uncontested that while in the backyard the Defendant was detained and not given any *Miranda* warnings.

At approximately 1:27 a.m., Officer Ramirez received a call that other officers had detained a suspect at 915 North Palmetto who matched the BOLO. Upon arriving at the scene (approximately ten to twenty minutes after issuing the BOLO), Officer Ramirez was assisted by SAPD Officer Sauceda in questioning the detained suspect (later identified as Defendant Romo-De La Rosa). Officer Ramirez asked the Defendant for identification and he replied he did not have any on him. She then asked the Defendant for his name and date of birth. The Defendant answered these questions. Officer Ramirez also asked the Defendant whether he had just visited a home at 1307 Hays Street. The Defendant responded that he had been visiting a nearby bar and was running away and was merely trying to get into the house to hide and avoid a fight that began at the bar. At this point the Defendant was not under arrest, was not handcuffed, but was being detained. He had not been read any *Miranda* warnings up to this point. The Defendant was questioned in the front of the North Pametto home and he was standing between two police vehicles.

---

[1] Tr. at 75.

2

After some period of time passed, the officers were able to match Defendant's name and date of birth in their computerized database. The database search indicated that the Defendant had an outstanding deportation warrant. The Defendant was arrested based upon the outstanding warrant, read his *Miranda* rights[2], taken to the City Magistrate's office and thereafter taken to the Bexar County jail.

Once the Defendant was at the jail, on December 15, Immigration and Customs Enforcement (ICE) agents were notified, and the Defendant was transferred to ICE. The Defendant made various verbal statements to ICE agents, which were later incorporated into an I-213 form.

## Defendant's Motion

Defendant argues: (1) the Defendant was seized without probable cause or reasonable suspicion; and (2) the Defendant was subjected to custodial interrogation without being given his *Miranda* warnings.

## Analysis

A.   Probable cause existed to seize Defendant

During the suppression hearing, the Defendant advanced an argument that Officer Ramirez had no basis for issuing a BOLO because she had already

---

[2] Officer Ramirez testified that her best recollection was that a Spanish-speaking officer read the Defendant his *Miranda* warnings. Defendant objects to this portion of the officer's testimony arguing that because Officer Ramirez does not speak Spanish, she cannot testify that the Defendant was actually read his *Miranda* rights. The Defendant's objection is noted, but overruled. There was no testimony elicited by the Defendant to contradict Officer Ramirez that the *Miranda* warnings were read. The mere fact that Officer Ramirez does not speak Spanish does not negate the fact that she could understand another officer's Spanish statement as the *Miranda* warnings being administered.

3

determined from the homeowner that no one entered the Hays Street house. Accordingly, Defendant argues that the officer knew that there was no basis for any reasonable suspicion that the Defendant had committed any crime. The Court rejects this argument. The mere fact that Officer Ramirez may have later determined that this would be a hard case to prosecute for burglary because there was no entry into the home does not negate her initial decision to issue a BOLO given a reasonable suspicion that a suspect was attempting to enter a home during the middle of the night.

In his post-hearing brief (docket no. 39), Defendant argues that given the totality of the circumstances, there was an insufficient basis to establish reasonable suspicion that the Defendant was engaged in any illegal activity.

"Temporary, warrantless detentions of individuals constitute seizures for Fourth Amendment purposes and must be justified by reasonable suspicion that illegal activity has or is taking place; otherwise, evidence obtained through such a detention may be excluded. In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Reasonable suspicion requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. Courts determine whether the stop was reasonable by conducting a fact-intensive, totality-of-the circumstances inquiry." *U.S. v. Rodriguez*, 564 F.3d 735, 740 41 (5th Cir. 2009)(citations omitted). "An alert or BOLO report may provide the reasonable suspicion necessary to justify an investigatory stop.

4

Whether a particular tip or BOLO report provides a sufficient basis for an investigatory stop may depend upon [1] the credibility and reliability of the informant, [2] the specificity of the information contained in the tip or report, [3] the extent to which the information in the tip or report can be verified by officers in the field, and [4] whether the tip or report concerns active or recent activity, or has instead gone stale." *Id.* at 742 (citations omitted).

In this case the homeowner made a 911 call to police that someone was trying to enter his home. This was a credible and reliable informant. The homeowner provided a description of the suspect. The description was adequate for police officers in the area in the wee hours of the night to locate the suspect. The report was made by the homeowner within minutes of the attempted entry and relayed to Officer Ramirez within minutes of her arrival. She thereafter issued the BOLO within minutes. Defendant argues that the BOLO did not exactly match the Defendant. However, exact descriptions are not required. *See U.S. v. Rodriguez*, 564 F.3d at 741-42 (rejecting the defendant's argument of the "relatively nonspecific" nature of the BOLO report in that case).

The Defendant also argues that police officers were required to obtain a warrant before they could enter the backyard of 915 N. Palmetto. The Court rejects this argument. The Defendant has not established that he has standing to contest the officers' entry into the backyard. Assuming *arguendo* that he has standing[3], the officers were justified in entering the backyard due to the exigent

---

[3] There was some testimony that members of the Vasquez family told police officers that the Defendant lived with them on occasions on Spruce Street. The evidence is not clear

5

circumstances.

    B.    When did *Miranda* warnings attach

*Miranda* warnings must be administered prior to "custodial interrogation." *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*.

The Supreme Court has described the *Miranda* custody test as follows:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

*Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also Yardborough v. Alvarado*, 541 U.S. 652 (2004); *U.S. v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) ("A suspect is 'in custody' for purposes of *Miranda* 'when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.' "); *U.S. v. Chavez*, 281 F.3d 479, 486 (5th Cir. 2002) ("To ascertain whether an individual was in custody, we examine all of the circumstances surrounding the interrogation, but ultimately

---

whether the home on Spruce Street is the same as 915 N. Palmetto Street.

ask whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."); *U.S. v. Chavira*, 614 F.3d 127, 133 (5th Cir. 2010)("The Court examines how the reasonable man in the suspect's position would have understood the situation. Specifically, '[t]he reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation-that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances.' The subjective intent of neither the officer nor the defendant is relevant to the custody determination.").

In this case the Defendant had been detained and handcuffed by a police officer in the backyard of the North Pametto home. He was thereafter escorted to the front of the home. It is unclear whether he was still in handcuffs at that time. It is also unclear how long the Defendant was restrained in handcuffs. Although at some point the handcuffs were removed, he was interrogated while standing between two police vehicles and four police officers were at the scene. The Court finds that the Defendant was "in custody" for purposes of *Miranda* because a reasonable person in the Defendant's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.

  C. Does the Court's finding of custody necessarily require the suppression of the Defendant's name and date of birth?

Although Officer Ramirez asked the Defendant his name and date of birth without first administering a *Miranda* warning, at that point in time the

7

Defendant was suspected of burglary. This is not a case where the Defendant was being randomly questioned about his immigration or citizenship status. "A request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the question be subject to scrutiny." *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996); *see also U.S. v. Dougall*, 919 F.2d 932, 935 (5th Cir. 1990) ("biographical questions-name, birth information, address, height, weight-asked here are part of the booking routine, not intended to elicit damaging statements, and thus not interrogation for fifth amendment purposes."); *U.S. v. Winn*, 57 F.3d 1078, *4 (9th Cir. 1995)("Custodial questioning constitutes interrogation only if the questions are reasonably likely to elicit an incriminating response.... The routine gathering of background biographical data is not interrogation for purposes of determining whether *Miranda* warnings are required. Although we have recognized the potential for abuse by law enforcement officers who might deliberately elicit an incriminating statement from a suspect under the guise of obtaining neutral information, the district court did not clearly err in determining that no such abuse occurred here.")(citations omitted); *U.S. v. Rawnsley*, Slip Copy, 2009 WL 1292038 (D. N.H. 2009)("Rawnsley seeks to suppress his answers to preliminary questions asked before he was advised of,

8

and waived, his *Miranda* rights. Those questions, for the most part, fell comfortably within the bounds of the 'booking exception' to the *Miranda* requirements (e.g., name, date of birth, social security number, address, and general identification information may be asked for without first providing *Miranda* warnings.")).

Inasmuch as the Defendant was properly arrested based upon the deportation warrant and then read his *Miranda* rights, Defendant's argument that any subsequent statements made to ICE agents should be suppressed under the "fruit of the poisonous tree" doctrine does not apply.

## Conclusion

Defendant's motion to suppress is denied.

It is so ORDERED.

SIGNED this 2nd day of November, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE